**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| TERESA PEREZ-RAMOS; J.S.D.P., | No. 24-7332 |
| Petitioners, | Agency Nos. |
| | A245-031-032 |
| v. | A245-031-033 |
| TODD BLANCHE, Acting Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted June 10, 2026
Seattle, Washington

Before: HAWKINS, W. FLETCHER, and M. SMITH, Circuit Judges.

Petitioners Teresa Perez-Ramos and her minor son, J.S.D.P., citizens of

Guatemala, petition for review of a Board of Immigration Appeals ("BIA")

decision dismissing their appeal from an Immigration Judge's ("IJ") denial of their

application for asylum and withholding of removal.[1]  We have jurisdiction under 8

U.S.C. § 1252.  We grant the petition and remand for further proceedings.

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.
[1] Petitioners do not challenge the denial of their application for protection under
the convention against torture.

Where, as here, the BIA "conducts its own review of the evidence and law" our review "is limited to the BIA's decision, except to the extent that the IJ's opinion is expressly adopted." *Shrestha v. Holder*, 590 F.3d 1034, 1039 (9th Cir. 2010) (quoting *Hosseini v. Gonzales,* 471 F.3d 953, 957 (9th Cir. 2006)). When making an adverse credibility determination, the agency must consider "the totality of the circumstances, and all relevant factors." 8 U.S.C. § 1158(b)(1)(B)(iii). Our Court reviews adverse credibility determinations for substantial evidence. *Ai Jun Zhi v. Holder*, 751 F.3d 1088, 1091 (9th Cir. 2014).

The BIA based its adverse credibility finding on purported inconsistencies about the location of J.S.D.P.'s burn, purported inconsistencies in the threats Petitioners experienced during the May 7, 2023 attack, and supposed unresponsiveness. Substantial evidence does not support the agency's adverse credibility determination.

## I. Purported Inconsistencies

First, the BIA found Perez-Ramos' testimony inconsistent because her declaration stated that the assailants poured boiling water on her son's "leg," but during her hearing, Perez-Ramos stated that they burned her son's "foot." A trivial inconsistency about the precise location of her son's injury cannot support an adverse credibility determination. *Ren v. Holder*, 648 F.3d 1079, 1086 (9th Cir. 2011) ("[T]o support an adverse credibility determination, an inconsistency must

not be trivial and must have some bearing on the petitioner's veracity."). This is especially true where, as here, the minor inconsistency was possibly caused by a translation error. *See He v. Ashcroft*, 328 F.3d 593, 598 (9th Cir. 2003) ("[F]aulty or unreliable translations can undermine the evidence on which an adverse credibility determination is based."). Perez-Ramos is an indigenous woman who speaks only Mam, the native language of the Mayan people. Perez-Ramos' hearing required two translators, one translating from English to Spanish and another translating from Spanish to Mam. The transcript indicates that there were several translation issues during the hearing, suggesting that this single-word discrepancy may have been caused by a mistranslation. *See also Maini v. INS,* 212 F.3d 1167, 1177 (9th Cir. 2000) ("We have long recognized that asylum hearings frequently generate mistranslations and miscommunications.").

It was especially inappropriate for the BIA to weigh this inconsistency against Perez-Ramos' credibility given the corroborating evidence provided. Petitioners in immigration proceedings may "attempt[] to rehabilitate [their] credibility by coming forward with other corroborating evidence." *Cinapian v. Holder*, 567 F.3d 1067, 1076 (9th Cir. 2009) (citation modified). Perez-Ramos provided photographs and a clinical report clearly indicating that J.S.D.P.'s burn was on his lower leg. The BIA discounted this evidence due to inconsistent testimony about the date on which Perez-Ramos took her son to the clinic.

"[M]inor discrepancies in dates that . . . cannot be viewed as attempts by the applicant to enhance h[er] claims of persecution have no bearing on credibility." *Quan v. Gonzales*, 428 F.3d 883, 887 (9th Cir. 2005) (citation modified). Moreover, it is indisputable that J.S.D.P.'s lower leg was severely burned, whatever the date of his clinic visit. Therefore, substantial evidence does not support the BIA's decision to discount this corroborating evidence.

Second, the BIA found Perez-Ramos' testimony inconsistent due to alleged discrepancies about the threats Petitioners experienced during the May 7, 2023 assault. In Perez-Ramos' declaration, she alleged that the assailants threatened to kill her and her son, but, in her hearing, she stated that the assailants threatened to kill her. Whether the assailants threatened to kill Perez-Ramos, or both her and her son, is not critical given her consistent testimony that she had been threatened. *See Shrestha*, 590 F.3d at 1044 ("[T]rivial inconsistencies that under the total circumstances have no bearing on a petitioner's veracity should not form the basis of an adverse credibility determination."). Later in the hearing Perez-Ramos clarified that if they were to return to Guatemala, the assailants would kill her and her son. Moreover, she consistently testified that these men raped her in front of her eight-year-old son.

The agency also erred by discrediting Perez-Ramos' supporting evidence. To support her testimony, Perez-Ramos provided a clinical report confirming that

she was raped and a police report recounting the attack. The BIA discredited the police report because it stated that the assailants "approached her and without saying a word struck her and dragged her to a corn field and raped her," supposedly contradicting Perez-Ramos' testimony that she was verbally threatened during the attack. However, the next sentence of the police report states that the assailants "told her that . . . if they saw her again, they would kill both her and her son." When making an adverse credibility determination, the agency is precluded from "cherry pick[ing] solely facts favoring an adverse credibility determination while ignoring facts that undermine that result." *Id.* at 1040. Thus, we find that the police report did not contradict Perez-Ramos' testimony, and substantial evidence does not support the agency's decision to discredit the report.

## II.    Alleged Unresponsiveness

The BIA also based its adverse credibility determination on the IJ's finding that Perez-Ramos' hearing testimony was unresponsive and followed her declaration verbatim. This conclusion is not supported by substantial evidence. For example, when the IJ asked "These men stopped you and what did they do?" Perez-Ramos responded, "Yes, they grabbed me." The IJ considered Perez-Ramos' answer non-responsive although she addressed the question. Other instances of alleged unresponsiveness were similarly responsive, or, as with Perez-Ramos' response to the IJ's questioning about her supposed memory condition,

were due to apparent misunderstandings and translation difficulties. *See He*, 328 F.3d at 598.

Under the totality of the circumstances, the agency's adverse credibility determination unreasonably relied upon details that are minor in comparison to the consistent, credible testimony that Perez-Ramos provided. On remand, the BIA shall find Petitioners' testimony credible. *See Soto–Olarte v. Holder,* 555 F.3d 1089, 1094–95 (9th Cir. 2009).

**GRANTED and REMANDED.**